# CHARLESTON.

## LULA V. LAMBERT, ADMRX., *v.* VIRGINIAN RAILWAY CO.

Submitted March 4, 1924.        Decided April 1, 1924..

1. EVIDENCE.—*Experienced Locomotive Engineer Competent to Testify as to Sufficiency of Specified Air Brake Equipment.*

    A locomotive engineer with many years experience in operating locomotive engines equipped with air brakes is qualified to testify as to whether or not certain brake equipment on an engine of the type with which he is experienced is sufficient to control a train under the circumstances and conditions in evidence. (p. 162).

2. TRIAL.—*Incompleteness of One or More Instructions Not Material, if Sufficient When Read and Considered Together.*

    All instructions submitted to the jury should be read and considered together, and if, when so read, they correctly state the law applicable to the case, mere incompleteness of one or more of them is harmless. (p. 164).

3. MASTER AND SERVANT.—*Contributory Negligence No Defense, Where Failure to Observe Safety Appliance Act Contributed to Injury.*

    In an action under the Federal Employer's Liability Law, where the act of negligence relied on is a violation of the Safety Appliance Act of Congress, contributory negligence will avail the carrier neither as a defense nor in diminishing damages if its failure to observe the latter act contributed in whole or in part to cause the death of the employee. (p. 164).

MCGINNIS, JUDGE, absent.

Error to Circuit Court, Mercer County.

Action by Lula V. Lambert, administratrix, against the Virginian Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Brown, Jackson & Knight* and *Harold A. Ritz, Williams, Loyall & Tunstall,* and *Martin & Wingfield,* for plaintiff in error.

*Hugh G. Woods* and *John R. Pendleton,* for defendant in error.

MILLER, JUDGE:

The plaintiff as administratrix of the estate of her deceased husband brought this action against the defendant company for damages alleged to have accrued to her and the deceased's four children by the death of the husband and father, a locomotive engineer in the employ of defendant. The action is based on the Federal Employer's Liability Law and the Safety Appliance Act of Congress. From the judgment on a verdict in favor of plaintiff, defendant has appealed.

It is alleged in the declaration that defendant failed to equip and provide the engine in charge of the decedent with good and sufficient brakes and other proper equipment, and to give decedent warning that another train was entering the track on which his train was moving.

The train driven by the decedent Lambert was moving eastward on the main line of the defendant company, and was known as train No. 703. The other train, No. 500, was entering the main line at Glen White Junction, the point of the accident, from a branch line known as the Shockley Branch. Only the engine of No. 500 had reached the main line when it was struck by Lambert's train. Neither of the crews of the two trains knew of the location or presence of the other train. Both were proceeding in the same direction, the two tracks running parallel to each other for several *hundred feet before reaching the junction point or switch.* Lambert's train was moving under orders to meet Extra 706, west bound, at a point east of Glen White Junction. When No. 500 reached Glen White Junction, the conductor in charge called up the dispatcher at Princeton, under whose orders both trains were running, for orders, and was directed to continue eastward and meet Extra 706 at a point 1.8 miles beyond where the same train was to meet No. 703. No signal was put out or flagman sent back on the main line to advise the crew of No. 703 that train 500 was entering the main line track. Both trains were extras, hauling coal, and neither was running on train order schedule.

Defendant relies on the alleged failure of plaintiff to establish the fact that the air brake equipment on engine No. 703 was not working properly, and on the negligence of plaintiff's decedent in failing to observe its Rule No. 3, as follows: "All trains, except first class trains and trains made first class by running on train order schedules, will approach all stations, water tanks and coaling stations under control and so proceed until the track is plainly seen to be clear. Responsibility for a collision at a station, coaling station or water tank will rest with the following or incoming train. This will not relieve train and enginemen from the responsibility of protecting trains at such stops as provided in Rules 86 and 99." Rule 86 gave right of way to certain superior trains over trains of inferior classes, and to trains moving in certain directions over trains proceeding in opposite directions. Rule 99 provided: "When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection, placing two torpedoes, and when necessary, in addition, displaying lighted fuses· * * * When a train is moving under circumstances in which it may be overtaken by another train, the flagman must take such action as may be necessary to insure full protection. By night or by day when the view is obstructed, lighted fusees must be thrown off at proper intervals." Rule "D-152" is as follows: "When a train crosses over to or obstructs another track, unless otherwise provided, it must first be protected, as prescribed by Rule 99, in both directions on that track."

Defendant argues that there is no evidence to sustain plaintiff's theory that the air brake system was not working properly, and that, therefore, Lambert's negligence in not approaching the junction under control, as he was required to do by Rule No. 3, was the proximate cause of the accident, for which no recovery can be had.

The train driven by plaintiff's decedent was composed of his engine, fifty-eight cars loaded with coal, two helper engines in the rear of the coal cars, and on the extreme rear a caboose. The accident occurred about half past three o'clock

in the morning. Engineer Marcum testified that he had been called to take engine 703 out from Page at 6:30 the evening before, but had refused to do so because: "The sprinkler hose pipe was plugged to the left injector, and there were two or three driving springs broken, and there was a tallow pipe broken between the low pressure engine and the high pressure engine, and one pump wasn't working." He says he reported the condition of the engine to the roundhouse foreman. There is no evidence that the pump was repaired at that time. The machinist to whom Marcum reported the condition of the engine testified that another machinist came on duty at seven o'clock, and that "whatever was done to that engine before it was taken out by Mr. Lambert was done by Mr. Brown." Brown testified that he repaired the tallow pipe, and "that's all the repairs I made that night." He says Lambert reported at ten-thirty. Adams, engineer on one of the helpers attached to Lambert's train, testified that he had driven engine No. 703 several times recently, and that one of the air pumps was not working; and that he had reported the condition of the pump to the roundhouse foreman three times. He says that after being repaired, the pump would "run a while and then go to the bad."

Adams testified that at the time of the accident, just before reaching Metalton, 3600 feet west of Glen White Junction, Lambert made a service application of the brakes, which reduced the air pressure some ten pounds, as shown by the gauge on his engine, and that the pressure did not come up to normal again. His opinion is that if the pumps had been working properly the air pressure would have built up to normal before Lambert made the emergency application just before the collision. Pugh, the engineer on the other helper, says that the air pressure as shown by his gauge decreased about twenty pounds when Lambert made the service application on approaching Metalton, and that the pressure did not come up again; and that it would be impossible to get an emergency application with a twenty pound reduction. The conductor on Lambert's train, a witness for the defendant, testified that just before the accident, because he thought the train was running too fast approaching the junction, he pulled the cord in his caboose which controlled the air, but

just as he reached for it the emergency application was made, and he found no air, "only a short exhaust." The evidence tends to show that after a service application of twenty pounds, the pressure should come back to normal in sixty or seventy seconds, and that from the time the service application was made before reaching Metalton it should have returned to normal, seventy pounds, before Lambert applied the emergency.

It appears that locomotive engines of the "700" type are equipped with two air pumps. There is much conflict of evidence as to the purpose of such equipment; as to whether one pump working properly is considered sufficient for all service, and whether the extra pump is to be used only when the other is not working; or whether both are necessary on engines of this type when attached to heavy trains. Several of the locomotive engineers who testified say that both pumps are essential to the proper control of the air brake system. Some of them testified that if the air brakes had been working properly, the emergency application would have stopped the train after the brakeman on No. 500 discovered the approach of Lambert's train and gave him the danger signal; and it appears from the evidence that an attempt was made to stop the train by the use of the emergency brakes as soon as the signal was displayed. The engineers on the helpers say that Lambert applied the emergency; that all the air left their gauges. The conductor testified that there was no air when he pulled the brake cord. One of these engineers says that the train slowed up gradually, like it would if a service application were made. This they both say was due to the fact that the pressure had not come up after the service application above Metalton.

Defendant objected to the evidence of all the locomotive engineers who testified for plaintiff on the question as to whether or not one pump was sufficient to control the train, on the ground that these witnesses were not experts and not competent to testify on this question. We think the evidence shows that these witnesses were qualified to testify on this subject. They are shown to have had from twelve to fifteen years experience as engineers on this and other railroads. They had operated air brakes under all conditions of rail-

roading, and a number of them were, at the time of the accident, running on this very division of defendant's system. Though, perhaps, they did not know as much about the intricate mechanism of the air brake system as the experts who designed the same and the mechanics who built it, their experience of many years rendered them qualified to speak of its actual operation and the results that could be obtained under given conditions. In support of their proposition counsel for defendant cite and rely on our case of *McKelvey, Admr.,* v. *C. & O. Ry. Co.,* 35 W. Va. 500, where it was held that a locomotive engineer, without any experience or skill in the construction and repair of boilers, is not an expert as to the effect of broken stay bolts in the boiler or of mud packed therein. In that case the locomotive boiler exploded. Of course, the witness there was not shown to have had experience with exploding boilers, and only one versed in the tensile strength of metals could say what would be the effect of the steam pressure. In *Bird's Case,* 21 Gratt. 800, it was held: "All persons who practice a business or profession which requires them to possess a certain knowledge of the matter in hand are experts, so far as expertness is required." Here it was necessary for the locomotive engineers who testified, to be familiar with the actual working of the air brakes which they were required to operate; and the evidence shows that they had passed examinations on this subject. We are of opinion that these witnesses were qualified to testify on the subjects on which they were examined. *Oil Co.* v. *Bartlett,* 62 W. Va. 700; *Bird's Case, supra; Washington & O. D. Ry. Co.* v. *Warner,* 124 Va. 452; 11 R. C. L. p. 574; 1 Wigmore on Evidence, (2nd ed.), §§556-561.

On cross-examination defendant's witness Perkins, assistant road foreman of engines, was asked: "If a service application of twenty pounds had been made on an engine of that kind and it didn't check its speed, what would you say was the trouble then?" Answer: "I would say that your braking power in your cars was cut out, you had cut your crossover pipes and you didn't get any braking power." The objection to this question is that there was no evidence that any application of the air did not check the speed of the train. Lambert's fireman, who was in a position to know,

testified that he couldn't tell that the emergency application had any effect on the speed of the train. Farley, fireman on one of the helpers testified that it seemed that the brakes didn't take much effect; and that to the best of his knowledge the speed of the train at the time of the collision was just about the same as before the brakes were applied.

It is submitted that plaintiff's instruction number one was erroneous, for the reason that it allowed the jury to find defendant guilty of negligent acts not alleged in the declaration. The instruction was as follows: "The court instructs the jury that if they believed from the evidence in this case that the death of the deceased E. J. Lambert resulted in whole or in part from the negligence of the defendant, its officers, agents or employees, then you shall find for the plaintiff." It is said that there is no allegation in the declaration that defendant violated Rule No. 91, introduced in evidence, as follows: "Unless some form of block signal is used, trains in the same direction must keep at least five minutes apart, except in closing up at stations." This rule was introduced along with a number of other rules. The allegation in the declaration that defendant negligently drove engine No. 500 onto the track on which Lambert's train was moving and immediately in front thereof, sufficiently charges negligence in running the two trains in close proximity to each other. Further, it is said that this instruction is not complete, and does not state the case made by the evidence. When read in connection with plaintiff's other instructions, this objection is cured. All instructions given to the jury should be read and considered together, and if, when so read, they correctly state the law, mere incompleteness of one or more of them is harmless. *State* v. *Snider*, 81 W. Va. 522; *State* v. *Clifford*, 59 W. Va. 1; *State* v. *Kellison*, 56 W. Va. 690.

It is submitted that plaintiff's instruction number three, telling the jury that if they found for plaintiff, her measure of damages would be such amount as would fairly and reasonably compensate her and her infant children for the pecuniary benefits they might reasonably have received if the deceased had not been killed, should also have told the jury that such sum should be reduced in proportion to the contributory negligence of plaintiff, if any. Plaintiff's instruc-

tion number four, on the question of contributory negligence, did contain such a provision. But, such an instruction would not be proper if the jury should find that defendant's violation of the safety appliance act of Congress contributed to the accident which caused the death of plaintiff's intestate. In *Union Pac. Ry. Co.* v. *Huxoll,* 245 U. S. 535, affirming the same case in 99 Neb. 170, it was said: "If the failure to have the brake power in working order contributed 'in whole or in part' to cause the death of deceased, the plaintiff in error would be liable in damages, and neither contributory negligence nor assumption of risk could avail the company as a defense or in diminishing the damages." See, also, *Railway Co.* v. *Campbell,* 241 U. S. 497; and 41 L. R. A. (N. S.), note p. 49.

The refusal of the trial court to give defendant's instructions numbers 3, 6, 7, 8, and 9, is assigned as error. No mention of these instructions is made in either of defendants two briefs, except the statement that their rejection by the trial court was erroneous. In substance, they would have told the jury that there was no negligence on the part of defendant in the manner in which train number 500 was moved over onto the main line at Glen White Junction, and that the railway company was not negligent in not giving notice to plaintiff's intestate of its intention to do so, or in not putting out a signal or sending out a flagman. We think these instructions are fully covered by defendant's instruction number 12, given. That instruction told the jury that if they believe from the evidence that the defendant company had in force Rule No. 3 (above quoted), and that this rule was known to plaintiff's intestate, that he then assumed all the risks of injury to himself while operating under said rule, and if they further believed from the evidence that the train driven by plaintiff's intestate was not a first class train, or a train made first class by running on train order schedule, and that the collision occurred at a station as defined by said rule, and was due to the failure of the defendant to send out a flagman or give other warning to plaintiff's intestate of the presence of the train on the track at that point, he assumed the risk of such failure, and the jury must find for the defendant. Besides, the rule referred to only required the engineer to

keep his train under control when approaching stations "until the track is plainly seen to be clear." From the evidence in this case the court could not say that train number 500 did not enter the main line after Lambert was satisfied that the track was clear at the junction. The engineer on number 500 testified that he had just entered the main line track when he saw the head light of the other engine coming straight at him; and he left his engine. He says the other engine struck his about the middle of the boiler. He does say he did not see or hear any other train when he started to move, but it does not appear just how near the junction point his engine was standing before he started forward. He saw only the headlight of the other engine, put on the engine brake and blew "down brakes"; but did not know whether or not his engine was moving when it was struck.

In view of the foregoing we are of opinion that the question of defendant's negligence, both as to the equipment on engine number 703, and as to the blocking of the main line track by moving train number 500 thereon, was for the jury; and we can not disturb their verdict in favor of plaintiff.

The judgment will be affirmed.

*Affirmed.*