THE FIRST NATIONAL BANK OF PETERSTOWN

*v.*

J. C. HANSBARGER *et al.*

(No. 9810)

Submitted October 1, 1946. Decided December 10, 1946.

*Sherman Ballard,* for plaintiff in error.

*H. E. DeJarnette,* for defendants in error.

LOVINS, JUDGE:

The First National Bank of Peterstown instituted this action by notice of motion for judgment in the Circuit Court of Monroe County against J. C. Hansbarger, E. A. Hansbarger, and Julia L. Hansbarger, and J. L. Warren. Warren was not served with process and made no appearance. The jury returned a verdict in the sum of forty-three hundred dollars in favor of plaintiff, on which the trial court rendered judgment against the three defendants first named above, who bring the case to this Court by writ of error.

J. H. Hansbarger, brother of two of the defendants and the son of another, was cashier of The First National Bank of Peterstown from the year 1923 to the year 1942.

In the month of January, 1929, he received a draft drawn by J. L. Warren on Warren's brother and payable at a bank in Beckley, West Virginia. The proceeds of the draft were deposited to the credit of Warren in the plaintiff bank and checks drawn by him against his account were paid. Shortly after the draft was received and deposited, Warren's credit balance was exhausted. The draft was returned dishonored and was carried in the assets of the bank for a time as a "cash item". In the latter part of the year 1929, the foregoing state of affairs was brought to the attention of the board of directors of the bank, which then insisted that J. H. Hansbarger make the loss good or lose his position as cashier. J. H. Hansbarger testified that the board also threatened to instigate a criminal prosecution against him if the loss was not made good. It is not entirely clear whether the entire board or a committee thereof discussed this matter with J. H. Hansbarger. At any rate two former members of the board testified that no threat of prosecution against him was made by the board or its committee.

There is evidence tending to show that it was the accepted practice in conducting the affairs of the plaintiff bank to allow depositors to check against unrealized balances.

Owing to the fact that J. H. Hansbarger was then indebted to the bank in the sum of eighteen hundred dollars, the bank refused to accept his note for the loss, as such action would result in an excessive loan.

J. H. Hansbarger went to his brother, J. C. Hansbarger, who lived in McDowell County, and represented that he was in trouble with the bank, and that the bank was threatening him with prosecution and the loss of his job unless a note was signed by his mother and two brothers. Acting on this representation, J. C. Hansbarger signed

the note as maker. J. H. Hansbarger then went to his brother, E. A. Hansbarger, a practicing attorney at Williamson, and told him that he was threatened with the loss of his job and criminal prosecution in connection with the overdraft in the bank, and on that occasion E. A. Hansbarger signed the note as an indorser. J .H. Hansbarger returned to Peterstown, and inclosed the note in an envelope with a letter to his mother, Julia L. Hansbarger, in which he told her that he was "in a little trouble at the bank", and requested her to indorse the note. Julia L. Hansbarger, observing that the note had been made and indorsed by her sons, indorsed the note and returned it to J. H. Hansbarger. These occurrences took place some time in the latter part of the year 1929 or the first part of the year 1930.

The note was carried for several years in the assets of the bank until December 30, 1943, when a renewal note, due on demand in the sum of four thousand dollars, was given, which was signed by J. C. Hansbarger, as maker, and indorsed by J. L. Warren, E. A. Hansbarger and Mrs. J. E. Hansbarger, who is the same person as Julia L. Hansbarger. The renewal note made December 30, 1943, is the note on which this action is predicated.

The notice of motion was returnable on July 11, 1944. Some negotiations were entered into by E. A. Hansbarger with counsel for plaintiff for a continuance of the cause. Counsel would not consent to a continuance without the approval of plaintiff, and thereupon E. A. Hansbarger discussed the continuance with two members of the board of directors of the plaintiff, and a continuance was obtained. The two directors who talked with E. A. Hansbarger testified that the conversation between them and E. A. Hansbarger indicated that if J. L. Warren did not pay the note, the maker and the other indorsers thereon would probably be liable therefor.

Defendants pleaded the general issue and filed a special plea setting up the defense that the signatures of

defendants to the note were obtained by duress. A demurrer was sustained to the first special plea, and thereafter an amended special plea was filed, pleading that the signatures of defendants on the original note were obtained by duress, and that defendants received no consideration for making and indorsing the note. A demurrer to the amended special plea was overruled, and plaintiff replied thereto. Upon the issues so made, the cause was submitted to the jury with the result above indicated.

For reversal of the judgment defendants rely upon following errors: (1) That there was no consideration moving from plaintiff to J. C. Hansbarger, E. A. Hansbarger and Julia L. Hansbarger for making and indorsing the original and renewal notes; and (2) that instruction No. 2, given on request of plaintiff, is erroneous.

Preliminary to discussing the assignments of error, it is to be noted that no judgment was rendered against J. L. Warren, although his primary liability for payment of the original indebtedness seems to be conceded.

We are here concerned with the status and liability of J. C. Hansbarger, E A. Hansbarger and Julia L. Hansbarger, who were the maker and indorsers, respectively, of the original note, and they, together with Warren, are the maker and indorsers of the renewal note of December 30, 1943.

Accommodation parties to a negotiable instrument are defined by statute as follows: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder, at the time of taking the instrument, knew him to be only an accommodation party." Code, 46-2-6. Unquestionably, J. C. Hansbarger, E. A. Hansbarger and Julia L. Hansbarger, in signing the original note as maker

and indorsers, merely lent their names to J. H. Hansbarger. Their actions placed them in the category of accommodation parties to the original note, which fact was known to plaintiff when the original note was made and accepted. If the plaintiff bank was the holder for value of the original note, it follows that it is likewise a holder for value of the note given in renewal thereof, and the liability of the maker and indorsers thereof is imposed by statute, Code, 46-2-6.

Plaintiff contends that its relinquishment of its claim for civil liability against J. H. Hansbarger operated as a valuable consideration moving to J. H. Hansbarger for its acceptance of the original note. Such position is well taken. In a case similar to that presented by this record, this Court held that the director of a bank was liable on his personal note, covering amounts of certain past due notes made by third parties, and discounted by the bank, while defendant was a director thereof, the bank having assigned the notes of the third parties to the director. *National Bank* v. *Freeman,* 89 W. Va. 344, 109 S. E. 726. The record herein does not indicate that there was an assignment to the maker and indorsers of the original note of the bank's claim against J. L. Warren; but it cannot be controverted that if and when the bank is repaid the sum received by Warren, the rights of the bank against Warren will pass by operation of law to the persons paying the indebtedness. In *Bank* v. *Freeman, supra,* the principle of valuable consideration is discussed in the following pertinent language: "A valuable consideration is the relinquishment by the promisee of some right which he may lawfully exercise or enforce or the incurring of some risk or trouble at the instance of the promisor." We do not think the case of *Bank* v. *Freeman, supra,* is distinguishable from the instant case on the ground that J. H. Hansbarger was the cashier of the plaintiff bank instead of a director. See 1 Michie on Banks and Banking, page 221.

J. H. Hansbarger, as cashier of plaintiff bank, was liable to it for a breach of trust, for exceeding his au-

thority or for having acted negligently, if such conduct resulted in a loss to the bank. 9 C. J. S., Banks and Banking, Section 117, subsection 2. He was required to act in good faith and use ordinary care, skill and diligence in and about the business of the bank while he was employed by it, and his failure to so act, resulting in a loss to the bank, rendered him liable. 7 Am. Jur., Banks, Section 288. The transaction herein between J. H. Hansbarger, as cashier of plaintiff bank, and J. L. Warren, as a depositor therein, amounted to an overdraft of Warren's account. *Union Electrical Steel Co.* v. *Imperial Bank,* 286 F. 857. See 5 Michie on Banks and Banking, 574.

While we do not pass on the specific question of J. H. Hansbarger's liability, it is a tenable argument that he, having permitted Warren to overdraw his account, knowing that the proceeds of the draft had not been realized, was liable to the bank for the loss resulting therefrom. 4 Zollman, Banks and Banking (Perm. Ed.), Section 2286. Nor do we mean to imply that J. H. Hansbarger was guilty of bad faith or culpable negligence, the testimony tending to show that he was following a custom prevailing at the bank. However, there is no doubt that the bank, prior to the making of the original note here considered, had a lawful claim against him for the loss occasioned by permitting Warren to overdraw his account, as distinguished from an unlawful, worthless or unfounded claim. See *Bank of Ohio Valley* v. *Lockwood,* 13 W. Va. 392, 427; *Whittaker* v. *S. W. Va. Improvement Co.,* 34 W. Va. 217, 226, 12 S. E. 507.

There are well defined exceptions with respect to the liability of the cashier of a bank in the circumstances here presented, and it is probable that J. H. Hansbarger could have availed himself of those exceptions as a defense to an action by the bank against him, had he chosen to do so. But he did not elect to follow that course, and decided to forego those defenses and procured the making and indorsement of the original note. The bank accepted the note made and indorsed by his brothers and

mother, and relinquished its claim against him, which, in our opinion, was of some value. This action rendered the bank a holder for value within the meaning of the statute hereinabove quoted.

The foregoing discussion may give rise to the question whether the value or consideration moving to J. H. Hansbarger is sufficient to support the obligation of the accommodation parties to the original note. The words of the statute are clear on this phase, providing, as it does, that an accommodation party is liable on a note to the holder for value. Code, 46-2-6. Furthermore, the consideration realized by the accommodation parties to the original note is that moving to J. H. Hansbarger, the person accommodated, and is of the same effect as if it had moved directly to defendants. *Farrar* v. *Bank of New York,* 90 Ga. 331, 17 S. E. 87. The issuance of a negotiable instrument gives rise to the *prima facie* presumption that it was made and delivered for a valuable consideration. Code, 46-2-1. Value, as related to a negotiable instrument, is defined by statute as any consideration sufficient to support a simple contract. Code, 46-2-2. For discussions of these principles, see Brannon's Negotiable Instruments Law, 5th Ed., pages 315 and 316, and 1 Williston on Contracts, Perm. Ed., Section 108.

The conclusion is inescapable that as to the original note the plaintiff bank, when it relinquished its rights against J. H. Hansbarger, became a holder for value, that such relinquishment constituted sufficient consideration for the original note moving to J. H. Hansbarger, and that such consideration was realized by the accommodation parties to the original note. *Farrar* v. *Bank of New York, supra.*

Whether there was a consideration for making and indorsing the original note and the renewal note of December 30, 1943, arising as it did on undisputed facts, was a question of law to be determined by the trial court and, as herein before indicated, we think such consider-

ation existed. But it clearly appears from the record herein that there was a conflict in the testimony as to whether plaintiff or its agents had coerced J. H. Hansbarger in procuring the original note to be made and indorsed by his brothers and mother.

The defense of duress was submitted to the jury on two instructions given at the instance of plaintiff, which were the only instructions tendered and given. Instruction No. 1, given without objection, was to the effect that the burden was on defendant to prove by a preponderance of the evidence that they had been subjected to duress by threats of prosecution against J. H. Harnsbarger. Instruction No. 2, given over objection, reads as follows: "The Court instructs the jury that unless they believe from the evidence that the plaintiff or its agents made threats of prosecution against J. H. Harnsbarger prior to the execution of the original note by the defendants, they shall find for the plaintiff the amount of the note and interest to date."

For the purpose of the discussion hereinafter to be made, we quote the objections to this instruction: "The defendants object to the giving of plaintiff's Instruction No. 2 on the ground that the law of the case should be that if the signatories to the note, which includes the maker and the endorsers, believed that threats of prosecution had been made against J. H. Hansbarger, and if they had reasonable grounds to believe that, then their signatures thereto, under such circumstances, were induced by duress."

It will be readily seen that the objection to the instruction is not specific as required by Rule vi (e) of Rules of Practice, 116 W. Va. lxiii. But waiving that defect for the time being, it seems that the objection was grounded on the doctrine of duress as applied indirectly by a third party benefiting therefrom. However, the objection omits an important, if not controlling, principle that such third party must have notice of the duress or the circumstances must be such as to impute notice to such

party, and that the defendants executed the note by reason thereof. *Bumgardner* v. *Corey*, 124 W. Va. 373, 21 S. E. 2d 360; *Carroll* v. *Fetty*, 121 W. Va. 215, 2 S. E. 2d 521. It is a general principle that a transaction may be avoided on account of duress and wrongful pressure. 5 Williston on Contracts, Rev. Ed., 4497 and 4500. As to threats of prosecution constituting duress, see 17 A. L. R. 325; 5 Williston on Contracts, Rev. Ed., 4509.

The principle embodied in instruction No. 2 is broad and comprehensive and said instruction, by necessary implication, authorized the jury to find for J. C. Hansbarger, E. A. Hansbarger and Julia L. Hansbarger, if the jury should find that duress had been applied to J. H. Hansbarger. In the particulars hereinbefore mentioned the instruction was erroneous, but the error in giving the instruction favored, rather than prejudiced, the defendants. The issue as to whether any threats of prosecution had been made against J. H. Hansbarger was submitted to the jury, and under the instruction, as given, it is fair to assume that had the jury believed that such threats had been made, they would have found for defendants. Therefore, we are not called upon to discuss in detail the doctrine of duress, as the jury, by its verdict, found as a fact on conflicting testimony that no duress was involved. The broad and comprehensive nature of the instruction having favored defendants and the objection to the giving thereof being untenable, we can see no error prejudicial to defendants.

The jury by its verdict having found that duress was not applied to J. H. Hansbarger prior to the execution of the original note, there being sufficient evidence to support that finding, and no prejudicial error appearing herein, the judgment of the Circuit Court of Monroe County is affirmed.

*Affirmed.*