STATE OF WEST VIRGINIA

v.

RANDOLPH A. FLINT

(No. 10834)

Submitted January 15, 1957. Decided February 26, 1957.

510

*R. J. Thrift, John H. McCutcheon, Elmer D. Strickler,* for plaintiff in error.

*John G. Fox,* Attorney General, *Angus E. Peyton,* Assistant Attorney General, for defendant in error.

GIVEN, JUDGE:

The defendant, Randolph A. Flint, on November 16, 1954, at a regular term of the Circuit Court of Nicholas County, was indicted for murder of Freda Garrett Flint, the wife of defendant. Defendant was tried at the May, 1955, term of the court, and a verdict of murder of the first degree, with recommendation, was returned by the

jury. On September 14, 1955, defendant was sentenced to the penitentiary for the term of his life.

The homicide occurred on the night of September 29 or the early morning of September 30, 1954, at a place of business known as the "Wagon Wheel", on Fenwick Mountain, owned and operated by defendant and his wife. Beer was sold and dances were held at the place of business. The room in the building in which the business was operated was divided by a partition through which a doorway led from that part of the room where merchandise was sold to the dance hall. The doorway through the partition was near the front of the building. To the right, as entering the front door of the building, was a counter over which sales were made. An open way around the counter, from the space in front thereof was, at the rear of the room, approximately thirty one feet from the front door.

On the evening of the homicide, a dance was in progress at the place of business until near midnight. The defendant participated in the dance, apparently having employed a person by the name of Layton Stanley to attend the sales at the counter on that evening. Though usually present when dances were held, Mrs. Flint was not at the dance on the evening of the homicide, having on that evening, in company with her father, her brother, her son, and the brother's wife, attended automobile races at Rupert, West Virginia. After the dance had ceased, just before midnight but before all the participants in the dance had left the place of business, Mrs. Flint appeared in the room wherein merchandise was sold and turned off the electric lights. On request of someone at the counter that the lights be turned back on, she stated: "I am not going to do it". Defendant then stated to her: "You get the hell out of here and get to the house, and when you get to the house you stay at the house". Whereupon she replied to defendant: "I am not going to do it. I have got a thousand dollars invested in this place and it is just as much mine as it is yours". After further such quarreling, it was testified that defendant stated:

"I mean for you get to the house by God, or I'll shoot you", and that "So he told her that again and so whenever she answered, 'I ain't going' so he up with the gun like that and shot her". Mrs. Flint was near the front of the room when the shot was fired, and fell to the floor, partly through the doorway leading through the partition. Defendant, with the help of others, caused Mrs. Flint to be almost immediately removed to a hospital where, after a few hours, and without regaining consciousness, she died from the effects of the wound caused by the shot.

At the time the shot was fired, the lights in the building were not on, but light from headlamps of an automobile parked in front of the building, shining through a window, sufficiently lighted the inside of the room to enable persons therein to observe the movements of defendant. It seems to be undisputed that defendant, after Mrs. Flint had refused to leave the place of business, went behind the counter, obtained the gun, a "32-20 caliber" Winchester center fire rifle, and that the rifle was in the hands of defendant at the time the shot was fired. James E. Bryant, a witness testifying for the State, was asked: "How was the defendant, Randolph Flint, holding that gun at that time?"; to which he answered: "He was holding the gun down first when I seen it, then he raised it up and fired the shot". Other testimony strongly corroborates the statement quoted. The defendant did not testify. There appears no question that he had been drinking beer on the evening of the homicide. His principal contention is that the shot was fired accidently. Little, if any, evidence supports that contention.

The defendant and Freda Garrett Flint were married several years prior to 1954. She had previously been married and was the mother of a son, about eleven years of age, by the former marriage. At the time of the homicide, the son was living in the home of his mother and the defendant, near the place of business where the homicide occurred.

There appears no question that defendant and Mrs.

Flint quarreled on numerous occasions, and that defendant had previously threatened to "kill" her, or to "shoot" her. On the day before the dance defendant and Mrs. Flint had quarreled concerning punishment of her son, and testimony indicated that the reason Mrs. Flint had gone to the races with her son was to prevent such punishment by defendant.

There was considerable testimony offered on behalf of defendant to the effect that during the progress of the dance on the evening of the homicide, defendant appeared to be acting in his usual manner, without appearance of any bad "mood", and appeared to be "having a good time" at the dance. There was also substantial evidence to the effect that the quarrels between defendant and his wife occurred only at times when he was drinking intoxicating liquors, and that at other times the relationship between the defendant and Mrs. Flint was that of affectionate respect. Other pertinent facts will appear in discussions of the several assignments of error.

Defendant's first assignment of error is based on his contention that the trial court did not provide "a panel of twenty prospective jurors free from legal exception". It is contended that the trial court erred in refusing to excuse from the panel of twenty Oscar Hamrick, and in excusing from the panel Ward Roach.

Oscar Hamrick, on his *voir dire*, when asked whether he knew anything about the facts in the case, answered, "Well, I do". He further stated that he had heard the case discussed; that he was personally acquainted with the defendant and Mrs. Flint; that he was at "her wake"; and that he had visited in their home three or four times in the year previous to the homicide. He was asked this question: "Well, now, would it take very much of that evidence to erase from your mind the impressions that you now have as to how this shooting occurred?" His answer was, "Well, it would". He further stated, however, that he was not conscious of any bias or prejudice; that he could give the defendant and the State a fair and

impartial trial; that he had no opinion as to the guilt or innocence of the defendant; and that he could make his decisions as a juror "entirely from the evidence". The juror was thoroughly questioned by counsel and the trial judge. He was peremptorily struck from the panel by defendant.

Ward Roach, on his *voir dire,* testified to the effect that he was a brother of Frank Roach, who, with his wife and stepdaughter, was subpoenaed in the case; that he believed he would be "able to go by the evidence in a case like this" without regard to the relationship; and that he had not discussed the case with his brother Frank, his brother's wife, or the stepdaughter.

Careful consideration of the questions presented leads us to the conclusion that the trial court did not commit reversible error, either in refusing to excuse Oscar Hamrick from the panel, or in excusing Ward Roach therefrom. The defendant was, of course, entitled to a panel of twenty jurors, each impartial and free from bias or prejudice, before being required to exercise his rights as to peremptory challenges, *State* v. *Gargiliana,* 138 W. Va. 376, 76 S. E. 2d 265. In *State* v. *Larue,* 98 W. Va. 677, 685, 128 S. E. 116, this Court, in considering qualifications of veniremen, stated: "* * * So much depends upon the manner of the juror and his tone of voice and the opportunity of the trial judge to see and know the juror that it is the settled practice to not interfere with his findings unless clearly against the evidence. *Wormeley* v. *Commonwealth,* 10 Grat. 658. The appearance of the juror, his bearing, and manner, are often of great consequence in interpreting his answers, and for that reason in any doubtful case the decision of the trial court as to his eligibility must control. *State* v. *Stewart,* 85 Kan. 404. The question presented as to his qualification was one of mixed law and fact. The finding of the trial court upon that issue ought not to be set aside unless the error is manifest. *Reynolds* v. *U. S.,* 98 U. S. 145, 25 L. Ed. 245 * * *". See *State* v. *Toney,* 98 W. Va. 236, 127 S. E. 35. Although a venireman, by "reason of some-

thing he has heard or read may have entertained an opinion as to the guilt or innocence of" a defendant, such fact does not necessarily control in the determination of such qualifications of the venireman to sit as a juror in the trial: "* * * The true test is whether without bias or prejudice he can render a verdict solely on the evidence, under the court's instructions, disregarding any prior opinion which he may have entertained." Parts Point 1, Syllabus, *State* v. *Dephenbaugh,* 106 W. Va. 289, 145 S. E. 634. See *State* v. *Camp,* 110 W. Va. 444, 158 S. E. 664; *State* v. *Richards,* 101 W. Va. 136, 132 S. E. 375.

Leroy Rhodes, a witness called by the State, was asked about a threat made by defendant against the life of Mrs. Flint, and was permitted to say: "And he [defendant] said — he had a pocketbook, must have been that thick: I don't know whether it was one dollar bills in it or what kind of money but it was full of money. Of course I didn't look in it. And he said, 'I'll give you any part of that or all of it if you will burn up the house,' and said, 'I want to get the insurance off of it.' I said, 'What about Freda and Richard?' — That is the kid there — I said, 'They will burn up in the house.' And he said, 'I don't care if they do. I am going to kill her anyhow.'" Defendant concedes that such part of the statement as relates to the threat against the life of Mrs. Flint was properly admitted in evidence, but contends that the part thereof relating to the offer to pay the witness for burning the house was not admissable, for the reason that it tended to prove defendant guilty of a separate and distinct offense, relying on cases like *State* v. *Foley,* 128 W. Va. 166, 36 S. E. 2d 854.

We think there is no substantial merit in the contention. The offer was an integral part of the threat, and to have refused the admission of that part of the statement would have denied the State the right to have the jury know the basis of the threat or the circumstances connected therewith. We need not here consider whether the offer, as testified to, actually constituted a separate

and distinct offense, since it clearly appears that in no event was defendant prejudiced by the admission of the statement. See *State* v. *Lutz,* 85 W. Va. 330, 101 S. E. 434; *State* v. *Young,* 82 W. Va. 714, 97 S. E. 134; 9 M.J., Homicide, Section 64.

Subsequent to the imposition of sentence against defendant, he filed his petition alleging facts contended sufficient to require the granting of a new trial. From the allegations of the petition, and the exhibits therewith, it appears that Leroy Rhodes, the witness named above, subsequent to the imposition of sentence, executed an affidavit to the effect that he, the witness, had no recollection of having testified in the manner above indicated; that if he did so testify, such testimony was untrue, and that defendant made no such statements to the witness, or in his presence, and that he, the witness, had previously been confined in an institution for insane. Treating the alleged facts as after discovered evidence, defendant moved for a new trial. After fully considering the matters arising on the petition, the trial court denied the motion for a new trial and dismissed the petition. We are of the view that there was no prejudicial error in denying the motion and dismissing the petition.

In *State* v. *Poe,* 69 W. Va. 260, 262, 71 S. E. 177, this Court stated: "* * * It is an established rule to grant new trials very rarely on after discovered evidence, and never but under very special circumstances". "In this jurisdiction the right to a new trial on the ground of newly discovered evidence is greatly restricted, for the purpose of keeping litigation from being unnecessarily prolonged. The general rule is stated in *Halstead* v. *Horton,* 38 W. Va. 727, 18 S. E. 953, and *Phenix Fire Insurance Company* v. *Virginia-Western Power Company,* 81 W. Va. 298, 94 S. E. 372". *Cremeans* v. *Myers,* 136 W. Va. 157, 162, 67 S. E. 2d 28. In the recent case of *State* v. *Spradley,* 140 W. Va. 314, 84 S. E. 2d 156, this Court exhaustively reviewed its holdings relating to the granting of new trials, specifically pointing out the essential requisites therefor. We see no need to repeat here what

was said there. Measured by the tests required by the holding in that case, the facts alleged in the petition of defendant fall short, in different respects, of the requirements therein pointed out. In the first place, it may be seriously doubted whether the facts relied on in the petition constitute, in the usual sense, after discovered evidence, since the defendant was necessarily present at the trial and was then informed as to whether the testimony of Rhodes, then given, was true or false. Knowing it to be false, he was under a duty to contradict. No attempt was made to do so. See *State* v. *Spradley, supra; Hodnett* v. *City of Danville,* 152 Va. 955, 146 S. E. 281. Numerous other threats were made by defendant against the life of Mrs. Flint. The threat testified to by the witness Rhodes was merely an additional such threat and could not, in any manner, have affected the verdict returned, nor could it be expected to produce a different result upon a new trial. We see no possible prejudice to defendant by the denial of a new trial. See *State* v. *McMillion,* 127 W. Va. 197, 32 S. E. 2d 625; *State* v. *Beckner,* 118 W. Va. 430, 190 S. E. 693; *State* v. *Thomas,* 110 W. Va. 192, 157 S. E. 162; *State* v. *Lemon,* 84 W. Va. 25, 99 S.E. 263; *State* v. *Barrick,* 60 W. Va. 576, 55 S. E. 652.

Out of the presence of the jury, defendant showed unto the court that a psychiatric examination had been made of defendant for the purpose of determining "his mental age". The examination was made by a licensed physician, "practicing psychiatry exclusively". The physician would have testified before the jury, had he been permitted by the trial court to do so, that the examination disclosed that defendant's "mental age" was not greater than that of an average person of the age of "Ten years and eleven months". We think the trial court was not in error in refusing to let the evidence go to the jury.

Defendant concedes that "under existing law the action of the trial court was correct", but argues that the rule should be so changed as to permit defendant to

518

prove his mental age, in an effort to establish that he was not mentally capable of premeditation. In *State* v. *Harrison,* 36 W. Va. 729, 15 S. E. 982, this Court held: "10. A person partially insane is yet responsible for a criminal act if at the time of the act he knows right from wrong, and knows the nature and character of the particular act and its consequences, and knows that it is wrong, and is hurtful to another, and deserves punishment. In such case no mere irresistible impulse to do the act will exempt him from criminal responsibility for such act." Since that decision, the so called "right and wrong" test has been closely adhered to by this Court. We find no substantial basis for now questioning the soundness of that holding. See *State* v. *Painter,* 135 W. Va. 106, 63 S. E. 2d 86; *State* v. *Beckner,* 118 W. Va. 430, 190 S. E. 693; *State* v. *Fugate,* 103 W. Va. 653, 138 S. E. 318; *State* v. *Evans,* 94 W. Va. 47, 117 S. E. 885; *State* v. *Barker,* 92 W. Va. 583, 115 S. E. 421; *State* v. *Cook,* 69 W. Va. 717, 72 S. E. 1025; *State* v. *Maier,* 36 W. Va. 757, 15 S. E. 991.

Defendant's next assignment of error relates to the giving of State's Instruction No. 4, which reads: "The Court instructs the jury that a man is presumed to intend that which he does or which is the immediate or necessary consequence of his act; and if you believe beyond a reasonable doubt that Randolph A. Flint, with a deadly weapon in his possession, without any or upon very slight provocation, intentionally gave to the deceased, Freda Garrett Flint, a mortal wound, the defendant is prima facie guilty of willful, deliberate and premeditated killing and the necessity rests upon him of showing extenuating circumstances, or such circumstances appear from the case made by the State, he is guilty of murder in the first degree and you should so find by your verdict." Defendant's objection to the instruction appears to be that it ignores the theory of defendant that the homicide was the result of an accident, and does not tell the jury that any finding must be based on the evidence in the case. We find no substantial merit in the objection.

The instruction was based on the theory of the State that the defendant, by the use of a deadly weapon without any provocation, "intentionally" shot and killed Mrs. Flint. There was, as hereinbefore detailed, strong evidence supporting such theory, hardly, if at all, denied, certainly sufficient to warrant a jury finding to the effect that the killing was "willful, deliberate and premeditated". See *State* v. *Abbott*, 64 W. Va. 411, 62 S. E. 693. The instruction is not open to the objection that it relieved the State of the necessity of proving that the killing was intentionally done. On the contrary, it expressly required, as a requisite of a finding of guilt, that defendant "intentionally gave to the deceased * * * a mortal wound". See *State* v. *Sarah Ann Legg*, 59 W. Va. 315, 53 S. E. 545; *State* v. *Cross*, 42 W. Va. 253, 24 S. E. 996. Defendant's other objection, that the instruction did not tell the jury that a finding of guilt must be based on the evidence in the case, is also without substantial merit. A jury in any case is not, of course, permitted to base its verdict, in whole or in part, on facts or circumstances not supported by proof introduced. It does not necessarily follow, however, that such fact must be told to the jury in every instruction offered. If the instructions, read as a whole, clearly inform the jury of such fact, that is sufficient. In the instant case, by several instructions, some offered on behalf of the defendant and some on behalf of the State, the jury was informed of that fact. Mere incompleteness of an instruction, as distinguished from one which incorrectly states a principle of law, does not constitute reversible error, unless the instruction, in the circumstances of the particular case, probably confused the jury. See *Lambert* v. *Virginian Railway Co.*, 96 W. Va. 158, 122 S. E. 457; *Truman* v. *Wink-O Products Co.*, 96 W. Va. 256, 122 S. E. 745. In *State* v. *Rush*, 108 W. Va. 254, 150 S. E. 740, we held: "5. A verdict of guilty in a criminal case will not be reversed here because of error committed by the trial court, unless that error is prejudicial to the accused." See *State* v. *Smith*, 119 W. Va. 347, 193 S. E. 573.

The last assignment of error which we deem of suf-

ficient merit to require consideration relates to the giving of State's Instruction No. 10, which reads: "The Court instructs the jury that the right of self-defense does not imply the right of attack, and will not avail in any case where the difficulty was induced by the prisoner himself, unless before he shot, the prisoner declined further combat and retreated as far as he could with safety, and unless the killing was necessary in order to preserve his own life or to protect himself from great bodily harm." It is the position of defendant that his only theory of defense to the charge made against him in the indictment being that the shooting was accidental, that this instruction, based on the theory of self-defense, unsupported by any evidence, confused or misled the jury. There is no objection as to the form or contents of the instruction. The pertinent facts should be adverted to.

Shortly after the shooting, and before Mrs. Flint had been removed from the building wherein the shooting occurred, a knife, sometimes referred to as a "paring knife", was found near her body. One of the witnesses testifying on behalf of the State stated that the presence of the knife was pointed out by defendant before the removal of Mrs. Flint. A number of witnesses testified to the effect that defendant, about the time of the shooting, received a wound to one of his hands, which was bleeding. Doctor McClung, a witness called by the defendant, was asked on his examination in chief concerning the nature of the wound and as to whether he treated defendant for the wound shortly after the shooting. He was asked to point "out to the jury any scar that appears to have been left by the wound", which he did. On cross-examination, the knife, previously introduced as evidence by the State, was handed to the witness and he was asked to give an opinion as to whether "that knife could have been used to have produced this wound"; to which he answered, "Yes, sir". No witness saw the knife before the shooting, and no witness says that the wound was or was not made with the knife, or that Mrs. Flint ever had the knife. Practically every witness who testi-

fied concerning the affray, or matters connected therewith, whether witnesses for the State or defendant, testified concerning the knife, or the wound to defendant's hand. Witnesses for defendant, on their examination in chief, were interrogated concerning the knife or the wound. As illustrative, Mrs. Vada Roach, a witness called by defendant, on her examination in chief, referring to the time immediately before the shot was fired, was asked what she heard defendant say, and answered: "All I heard him say was, 'Look at my hand. What did you do that for? Look at the blood' ". In considering the questions raised and discussed in chambers, relating to the giving of several instructions offered, counsel for defendant formally disclaimed "any intention of having ever claimed or in the future ever claiming that this was a case of self-defense". However, no motion was made to strike any evidence relating to the theory of self-defense, and such evidence remained with the jury.

We find no prejudicial error in the action of the trial court in the giving to the jury State's Instruction No. 10, in the circumstances of this case. The trial court would have been justified, either because of the statement made in chambers by counsel for defendant or because of lack of sufficient evidence to support any theory of self-defense, in striking from jury consideration all evidence relating to that theory. Clearly, defendant, in the circumstances, was not entitled to any instruction based on any evidence relating to that defense. The instruction, however, was offered by the State. The State, instead of moving for the striking of the evidence on the grounds indicated, permitted the jury to consider such evidence under the instruction. Thus, the defendant could not possibly have been prejudiced. He obtained, in fact, an advantage, the State, a disadvantage. In other words, the State asked for less than that to which it was entitled. Of that the defendant can not complain. "2. The giving of an erroneous instruction which favors the complaining party is not reversible error". *The First National Bank of Peterstown* v. *J. C. Hansbarger, et al.,* 129 W. Va. 418, 40 S. E. 2d 822. See *State* v. *Dephenbaugh,* 106 W.

522

Va. 289, 145 S. E. 634; *State* v. *Smith,* 97 W. Va. 313, 125 S. E. 90; *Burton* v. *Oldfield,* 195 Va. 544, 79 S. E. 2d 660; *Norfolk Coca-Cola Bottling Works* v. *Land,* 189 Va. 35, 52 S. E. 2d 85.

This Court has noticed certain other questions not briefed, appearing on the face of the record, with reference to the saving and signing of the several bills of exceptions. Should there be substantial merit in such questions, the same result would be indicated as reached herein. For that reason, in this particular case, we have not fully considered the other questions.

Finding no reversible error in the final judgment of the Circuit Court of Nicholas County, the same is affirmed.

*Affirmed.*