STATE OF WEST VIRGINIA

*v.*

IVAN JOHNSON

(No. 13389)

Submitted October 9, 1973.    Decided December 18, 1973.

*Valentine, Wilson & Partain, William G. Wilson* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *E. Leslie Hoffman, III, Betty L. Caplan,* Assistant Attorneys General, for defendant in error.

NEELY, JUSTICE:

This is an appeal from an April 12, 1973 judgment of the Circuit Court of Logan County, entered upon a jury verdict which found the defendant, Ivan Johnson, guilty of possession of two pills of lysergic acid diethylamide, commonly known as LSD. Defendant assigns as error the circuit court's adverse rulings on (1) the suppression of evidence which allegedly was the fruit of an

unconstitutional search and seizure, (2) the constitutional validity of Chapter 52, Article 1, Section 2 of the *Code of West Virginia,* 1931, as amended, which excludes from jury service idiots, lunatics, paupers, vagabonds, habitual drunkards, and persons convicted of infamous crimes, (3) the failure to give a jury instruction which would have cautioned the jury closely to scrutinize the testimony of an informant and (4) failure of the State to prove a proper chain of custody of certain evidence.

At trial, the evidence revealed that in the late evening hours of July 7, 1972, the defendant, while attempting to inquire about a friend at the State Police Headquarters, was arrested and thoroughly searched by the State Police just after the defendant had parked his automobile near the headquarters building. The arrest and search were executed without warrants, and the search disclosed two LSD pills and two marijuana cigarettes. In September 1972 defendant was indicted for illegal possession of the two LSD tablets. There was a separate evidence suppression hearing at trial in which an informant testified that on July 7, 1972 the defendant was present in the defendant's automobile, when the informant purchased "13 hits of acid" from a third person. Although the defendant denies being present at the time of sale, he admits that he had spent part of the evening with the alleged seller of the illegal drugs. In the evening hours, the State Police arrested the alleged seller and several other individuals for various violations of the Controlled Substances Act, based upon the informant's statement concerning the events which allegedly transpired earlier in the evening. At the time of these arrests, the defendant, according to his own testimony, was visiting with his girl friend.

The arresting State Trooper testified at the suppression hearing that upon the informant's narrative of the evening's events, the defendant was subject to arrest for transfer of a controlled substance because the defendant was present with the third party seller of the

illegal drugs when the sale to the informant was consummated. After the sale to the informant and the informant's statement, the State Police arrested the alleged seller of the drugs. About midnight of July 7, 1972, the State Police were informed that the defendant could be found in a parking lot less than one hundred fifty feet from the State Police Headquarters, and upon this information a State Trooper left the headquarters building and arrested the defendant for the transfer of controlled substances. The defendant was then searched in the police headquarters building, and the State argues that the search was incident to a lawful arrest based upon probable cause. At the evidence suppression hearing the trial judge read into the record part of the informant's written statement to the State Police, upon which the defendant's arrest was predicated, which said: "I asked Ivan [the defendant] and James where the [sic] bought them [sic] the drugs and they wouldn't tell me." Upon this evidence, the circuit court overruled defendant's motion to suppresss and we hold that the circuit court did not err.

It is well settled law that the general powers of the police extend to executing an arrest without a warrant when the arresting officer, on reasonable grounds, believes that the subject individual has committed, is committing, or is about to commit a felony. *U.S. v. Snyder,* 278 F. 650 (N.D.W.Va.), *rev'd. on another point,* 285 F. 1 (C.A. 4th Cir., 1922); *Morris v. Boles,* 386 F.2d 395 (C.A. 4th Cir., 1967) *cert. denied,* 390 U.S. 1043, 88 S. Ct. 1640, 20 L. Ed. 2d 304 (1968); *U.S. v. Irby,* 304 F.2d 280 (C.A. 4th Cir. 1962) *cert. denied,* 371 U.S. 830, 83 S. Ct. 39, 9 L. Ed. 2d 67 (1962). Furthermore, it is well settled law that "reasonable grounds" or "probable cause" can arise when an officer receives a statement from an informant where the informant's statement is reasonably corroborated by other matters within the officer's knowledge. *U.S. v. White,* 342 F.2d 379 (C.A. 4th Cir. 1964) *cert. denied,* 382 U.S. 871, 86 S. Ct. 148, 15 L. Ed. 2d 109 (1965). Lastly, it is well settled law that if an officer has the right

to arrest on probable cause and he intends to arrest, he may arrest and search the subject individual without resort to the preferable method of obtaining an arrest or search warrant, if he has reason to fear the escape of the person to be arrested or the imminent destruction of evidence. *Dickey v. U.S.*, 332 F.2d 773 (C.A. 9th Cir. 1964) *cert. denied,* 379 U.S. 948, 85 S. Ct. 444, 13 L. Ed. 2d 545; *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

Applying these rules to the circumstances of the defendant's arrest and search, this Court finds that the circuit court could have found that (1) the arresting officer had reasonable grounds to believe the defendant either committed the felony of transferring a controlled substance, or alternatively was a principal in the second degree because, according to the informant's statement, defendant was present in the car aiding and abetting in the transaction, Chapter 61, Article 11, Section 6, *Code of West Virginia,* 1931; *State v. Franklin,* 139 W.Va. 43, 79 S.E.2d 692 (1953), (2) the informant's statements were corroborated by the details of the planned and executed events of the evening, and, (3) the defendant was near his automobile at the time of arrest, thus increasing the likelihood of his flight or his destruction or removal of contraband. The police were notified that the defendant was within view of the police headquarters, and immediately upon that notification, the police were in close pursuit. There was no opportunity whatsoever to obtain an arrest warrant.

Defendant next challenges the circuit court's overruling of the defendant's motion to quash the indictment on the grounds that Code, 52-1-2, as amended, and Code, 52-1-4, as amended, governing the selection of the jury panel are unconstitutional. Code, 52-1-2, as amended, provides:

"The judge of any court may, in his discretion, exempt or excuse any person from jury service when it appears that such service would be

improper or work an undue hardship. The following persons shall be disqualified from serving on juries: Idiots, lunatics, paupers, vagabonds, habitual drunkards and persons convicted of infamous crimes."

*Code,* 52-1-4, as amended, provides:

"The jury commissioners . . . shall . . . prepare . . . a list of such inhabitants of the county, not exempted or disqualified by law as aforesaid, as they shall think well qualified to serve as jurors, being persons of sound judgment, of good moral character, and free from legal exception. . . ."

Defendant argues that "these statutory classifications are unreasonable discriminations; that the persons disqualified are not sufficiently defined; that jury service is made to depend upon one's economic status, the poorer persons being disqualified from service; and, that the jury commissioners have no right constitutionally to select persons for jury duty on the sole criteria [*sic*] of what the commissioners consider to be 'sound judgment, good moral character and free from legal exception'." This Court finds this argument to be without merit and therefore we hold that the circuit court's ruling was correct.

The purpose of *Code,* 52-1-2, as amended, and *Code,* 52-1-4, as amended, is to give some substance to the constitutional mandate that "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Article III, Section 10 of the *Constitution of West Virginia.* Due process, or a fair trial, cannot be obtained for one individual, nor for all individuals, unless the atmosphere and reputation of the court, the jury, and its participants are held in high regard by the citizenry. More particularly, the dignity of the judicial process must be maintained. If, therefore, the judicial system could not be discriminating in the selection of jurors, juries would be unable to present the appearance of dispassionate fairness since some jurors,

as characterized in the *Code* provisions, would by their mere presence produce distraction, or cause disruption. It is for this reason that the legislature deemed it imperative that some individuals must be excluded from jury service when their presence would cause actual distraction or disruption. Certainly idiots, lunatics, habitual drunkards and persons convicted of infamous crimes fall within this category. Furthermore, the legislature's reference to "vagabonds" and "paupers", although perhaps inartfully drawn, and now archaic, refers, in turn, to those whom Blackstone described as "such as wake on the night and sleep on the day, and haunt customable taverns, and ale-houses and routs about; and no man wot from whence they come, ne whether they go." 4 *Bl. Comm.* 169. Such unfortunate individuals as vagabonds and paupers who are destitute, with no visible or actual means of support, cannot serve the function of being a representative peer, nor can they uphold the dignity of the court system, for not only are they potentially distracting, and disruptive, but they are in a practical sense characters most susceptible to bribes and extrajudicial persuasion. Paupers, as the word is used in *Code,* 52-1-2, as amended, does not refer to all persons of low income, or poor persons generally, or people who receive welfare assistance, but to those who are habitually and inextricably destitute by their own purposeful neglect of responsibilities. The petitioner has offered no evidence that the jury commissioners applied any less restrictive definition of the words "pauper" or "vagabond" than that just given.

*Code,* 52-1-4, as amended, is also challenged by appellant as unconstitutional because of the lack of a precise definition of persons of "sound judgment" and of "good moral character." Jury commissioners are charged with certain discretion in obtaining both a representative cross section of the community and assuring that there is a minimal likelihood that jurors will be subject to extrajudicial persuasion. It is not unreasonable, and it does not discriminate against any recognizable class for jury

commissioners to exclude persons from jury service who have demonstrated traits of immorality which have shocked the conscience of the community. Mere excentricity or the holding of radical beliefs does not disqualify a person for jury duty; however, the legislature is entitled to direct the jury commissioners to exclude persons who are devoid of a sense of responsibility and who have demonstrated by their flagrant violation of society's rules that they do not believe in the rule of law and would be unlikely to comply with the obligations established under the oath for jurors. We therefore hold that *Code,* 52-1-2, as amended, and *Code,* 52-1-4, as amended, are constitutional as written.

Defendant next challenges the circuit court's refusal to give defendant's jury instruction No. 12, which said:

> "The Court instructs the jury that the testimony of an informer who is engaged by the state and who invites the commission of a crime in order to detect the commission thereof, is of a kind with that of a person of interest, and should be scrutinized closely and received with caution."

This Court holds that the refusal to give the tendered instruction was not error, as the court gave a proper instruction on the jury's right to determine the credibility of witnesses. Defendant's instruction No. 2, as given, stated:

> "The Court instructs the jury that you are the sole judges of the evidence in this case as well as the judges of the credibility of witnesses testifying before you; and in determining the weight to be given to the evidence of any witness who has testified in this case, you have the right to take and consider the intelligence of such witnesses, his or her conduct, appearance and demeanor while testifying, as well as the interest such witness may have in the result of the trial, if any appear, and, from all these and all other facts and circumstances in the case, give the evidence of such witnesses such credit as the jury may believe it entitled to, the jury being the sole

> judges of the evidence and the weight thereof, as
> well as the credibility of the witness who testified
> in the case."

Defendant's instruction No. 2 was a proper instruction. *State v. Roberts,* 50 W.Va. 422, 40 S.E. 484 (1901); *State v. Staley,* 45 W.Va. 792, 32 S.E. 198 (1899). Under West Virginia law the defendant was not entitled to have the circuit court instruct the jury as to the credibility of the informant. Under a general instruction on credibility, defense counsel was entitled to argue the possible interest of the informant before the jury and to comment on the informant's testimony in closing argument. "Where instructions given clearly and fairly lay down the law of the case, it is not error to refuse other instructions on the same subject. The court need not repeat instructions already substantially given." Syl. pt. 4, *State v. Bingham,* 42 W.Va. 234, 24 S.E. 883 (1896).

The last assignment of error challenges the admission of expert testimony by the chemist who examined the pills upon the grounds that the State did not show a proper chain of custody. The record shows that Trooper Brammer was present during the search and seizure and that upon receiving the two pills, along with cigarettes and a match box, he placed everything in a plastic bag and then placed the plastic bag in a white envelope, which was sealed and stored in the evidence room of the State Police Barracks at Logan. Two days after the arrest, Trooper Brammer transferred the sealed white envelope to Trooper Adkins who hand-carried the envelope, as well as other envelopes, to the Criminal Identification Bureau in Charleston. At the bureau, Trooper Adkins personally delivered the envelopes to Lt. Barker, the State Police chemist, who subsequently analyzed the two pills and identified elements of LSD. This Court finds that the State adequately proved a proper chain of custody for the seized contraband. At trial, defendant's counsel moved to strike the testimony of the chemist on the grounds that the State did not demonstrate that the chemist could distinguish one white envelope from another. The trial

judge remarked that defense counsel could have developed evidence on that problem on cross-examination, but chose not to do so. The State demonstrated a proper chain of custody to the State laboratory. If the defendant were convinced that there might be confusion with other drugs at the analysis stage, defendant was required to develop evidence of such confusion on cross-examination. On the record there is neither evidence that the officers were or were not confused by four different white envelopes.

For the reasons stated above we hold that the circuit court did not err in overruling the various motions of the defendant and therefore the judgment of the Circuit Court of Logan County is affirmed.

*Affirmed.*