332 S.E.2d 246

**STATE of West Virginia**

v.

**Glenna J. DUELL.**

**No. 16496.**

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1985.

Decided June 27, 1985.

234

W.T. Weber, Jr., R. Russell Stobbs, Weston, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Justice:

The appellant, Glenna J. Duell, appeals from her conviction in the Circuit Court of Lewis County of first degree murder with a recommendation of mercy. She assigns numerous errors that she maintains warrant reversal of her conviction. Following a brief discussion of the circumstances that led to her conviction, we will address each of these assignments of error.

On March 10, 1983, the appellant entered a private club in Lewis County known as the Cardinal Lounge, walked up to her husband, Karl Duell, who was seated at the bar, ordered a drink, produced a .38 caliber pistol, and, in the presence of six witnesses, shot him once at close range in the chest. Her husband said, "You finally did it, didn't you," stood up momentarily, fell to the floor, and died. The appellant placed the gun by his body, ordered another drink, and calmly waited until the police arrived.

At trial, the appellant relied on the defense of insanity. A psychiatrist and a psychologist testified on her behalf. Dr. Lee L. Neilan, a board certified psychiatrist, testified that, in her opinion, the appellant suffered from psychogenic fugue and was incapable of perceiving the nature and consequences of the actions that resulted in her husband's death. Julie Blackman Doron, Ph.D., Assistant Professor of Psychology and Women in the Department of Psychology at Barnard College in New York, testified that the appellant was a "battered woman" and that, as a result, the likelihood that she was in touch with reality, was aware of the consequences of her actions, or understood right from wrong at the time of the shooting, was minimal.

The appellant further testified that, initially, she could not remember anything from the time she spoke with a customer at her place of business shortly before her departure to the Cardinal Lounge until after she was released from jail on bond the following day. She admitted, however, that after she had been placed under hypnosis by Dr. Doron, she was able to recall most of what had transpired.

The State's psychiatrist, Dr. Thomas S. Knapp, testified that, based upon his examination of the appellant, evaluation of psychological examinations administered and results obtained by psychologist Donald R. Swick, and the appellant's personal history, he believed she had the capacity to appreciate the wrongfulness of her actions and could have conformed her conduct to that required by law.

I

The appellant's first assignment of error is the State's nondisclosure of psychological examinations and results relied upon by Dr. Knapp during his rebuttal testimony on the issue of insanity. On November 7, 1983, pursuant to W.Va.R.Cr.P. 16(a)(1)(D), the appellant requested the opportunity to inspect, copy, or photograph "any results or reports of physical or mental examinations, and of scientific tests and experiments ... which are material to the preparation of the defense or are intended for use by the State as evidence in chief at trial." Specifically, the appellant requested access to "(a) Report of Dr. Knapp of the mental examination performed at the request of the State; (b) a copy of the tape of the interview conducted by Dr. Knapp of the Defendant; (c) A copy of the psychological tests performed under the direction of Dr. Knapp; (d) The results of the psychological tests performed under the direction of Dr. Knapp...." On November 14, 1983, Dr. Knapp reported that, "As a result of the mental status examination, review of the history and evaluation of the psychological tests ... it is my opinion that Glenna JoAnn Duell is and was mentally responsible for her actions." Although his report mentioned "extensive psychological

tests," including the Minnesota Multiphasic Personality Inventory [MMPI] and the Wechsler Adult Intelligence Scale-Revised, he failed to include a copy of any of the psychological tests administered or the results of all of the tests performed.

On November 30, 1983, the appellant filed her second request for discovery seeking "a copy of the psychological tests performed under the direction of Dr. Knapp, performed by Donald R. Swick, Clinical Psychologist, upon the Defendant...." This request was again ignored by the prosecution. On December 5, 1983, the first day of trial, the appellant filed her third request for discovery of the psychological tests administered and results obtained under the direction of Dr. Knapp. Although this motion for discovery was granted, the only test disclosed by the prosecution was the MMPI. The appellant did not receive nor was she permitted to inspect any of the other psychological tests administered, including the Wechsler Adult Intelligence Test which had been relied upon in Dr. Knapp's earlier report.

At trial, Dr. Knapp stated that the bases of his opinion concerning the issue of the appellant's sanity was "my evaluation of the personality along with the assistance of indepth psychological tests." He testified that, "Psychological tests were performed upon her. There were a number of them including the Minnesota Multiphasic, Wechsler's Adult Intelligence Test, The Thematic Apperception Test, the Raw Shock [sic] Test, the Bender-Gestalt Test. In other words, a complete battery of tests to test and examine all facets of her mental functioning." Dr. Knapp further described his utilization of these five tests, "The psychological test is my laboratory. I take the results of the psychological tests just as a surgeon or an internal medicine specialist might utilize the x-ray." Despite this rather heavy reliance upon the five psychological tests administered, the appellant was given only the Wechsler Adult Intelligence Test results and the MMPI test and results.

■ The mandate of Rule 16(a)(1)(D) of the West Virginia Rules of Criminal Procedure is abundantly clear:

Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at trial.

Unquestionably, the failure of the State to comply with this rule, as well as with the trial court's discovery order, was erroneous. The State's weak reply on appeal is that this error was harmless, and thus does not warrant reversal.

■ In Syllabus Point 2 of *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980), this Court held that:

When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

*See also* Syl. pt. 2, *State v. Samples*, 174 W.Va. 584, 328 S.E.2d 191 (1985); *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89, 94 (1983); *State v. Meadows*, 172 W.Va. 247, 304 S.E.2d 831, 838–39 (1983); *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43, 47 (1983); *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402, 412 (1982); *State v. Ward*, 168 W.Va. 385, 284 S.E.2d 881, 884 (1981); Syl. pt. 4, *State v. White*, 167 W.Va. 374, 280 S.E.2d 114 (1981); *State v. Trail*, 163 W.Va. 352, 357, 255 S.E.2d 900, 904 (1979); *State v. Stewart*, 161 W.Va. 127, 132, 239 S.E.2d 777, 781 (1977); *Wilhelm v. Whyte*, 161 W.Va. 67, 71, 239 S.E.2d 735, 738

(1977); Syl., *State v. Cowan,* 156 W.Va. 827, 197 S.E.2d 641 (1973).

The element of surprise and, more importantly, the extent to which the failure to disclose a criminal defendant's psychological tests and results can significantly hamper the preparation and presentation of his or her defense is amply illustrated by the one disclosure of such evidence in this case. As previously noted, the State did provide a copy of the appellant's MMPI and its results. On quite effective cross-examination, much to Dr. Knapp's chagrin, the appellant conclusively established that the MMPI, relied upon most extensively during Dr. Knapp's direct testimony, had been incorrectly scored on the "male" instead of the "female" scale, which, by Dr. Knapp's own admission, resulted in its complete invalidity. Of the other four tests administered, only the results of the Wechsler's Adult Intelligence Test were disclosed by the State, which although perhaps relevant to the question of competency, would be of little benefit to a determination of sanity. The appellant was caught completely by surprise when Dr. Knapp mentioned the Thematic Apperception, Rorschach, and Bender-Gestalt tests on direct examination, denying her the opportunity to mount a similarly powerful attack on Dr. Knapp's already weakening credibility. Furthermore, we note with disfavor the prosecution's apparent perception that Dr. Knapp could promiscuously refer to his so-called psychological "x-rays" without introducing the same into evidence.

Other courts have recognized the prejudicial nature of the prosecution's failure to disclose a criminal defendant's psychiatric and psychological tests and results. For example, in *Hayes v. State,* 274 Ark. 440, 444, 625 S.W.2d 498, 500 (1981), the Arkansas Supreme Court overturned the double felony murder conviction of a defendant whose records pertaining to court-ordered psychiatric and psychological examinations were withheld by the prosecution, stating that:

> [I]t could be that an inspection and copying of these records and reports would have better enabled the appellant to prepare his defense, or to interpose the defense of insanity, or present at trial cru-

cial evidence bearing on mitigation, such as possible mental retardation, during the sentencing phase of the trial. We hold it was prejudicial error to deny his access to these ... reports.

Similarly, in *State v. Cook,* 43 N.J. 560, 569–70, 206 A.2d 359, 364 (1965), where the New Jersey Supreme Court reversed a trial court's refusal to compel disclosure of a report by state psychiatrists conducted pursuant to court order, the court noted that:

> The defendant simply urges, and we agree, that the reports of the examination should now be made available to him for inspection in order that he may fairly defend himself.... Defense counsel, whose investigatory resources are far from those of the State, should have the benefit of all that is in the reports by the State's psychiatrists to the just end that he may intelligently advise as to the defense and properly prepare for trial. It must be borne in mind that even if the defendant is sane within the legal definitions, he is nonetheless entitled to introduce evidence relating to background and to any abnormal or subnormal mental condition; such evidence may bear heavily on the degree of guilt and on the measure of punishment.

Finally, in granting a request for inspection and reproduction of a report prepared by a government psychiatrist, the court in *United States v. Dannon,* 481 F.Supp. 152, 155–56 (W.D.Okl.1979), observed that:

> The interest favoring the discovery request in this case is ... the possible usefulness of the requested matter to Dannon's preparation of his defense.... Whenever insanity is asserted as a defense and is supported by credible evidence, "it is of critical importance that the defendant's entire relevant symptomatology be brought before the jury." *Gordon v. United States,* 438 F.2d 858, 883 (Fifth Cir.1971), *cert. denied* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971).

█ Dr. Knapp, the prosecution's sole expert witness on the issue of the appellant's sanity, clearly expressed an opinion which was extremely unfavorable to her defense. Furthermore, the appellant was quite persistent in her attempts to secure

the information withheld. We therefore hold that the nondisclosure of examinations administered and results obtained under the direction of Dr. Knapp constituted reversible error.

## II

■ The appellant's second assignment of error is the trial court's failure to strike Dr. Knapp's testimony and to direct a verdict against the prosecution following his admission concerning the invalidity of the MMPI results. With respect to the reception of evidence in general, however, we note that, "Motions to introduce and motions and objections for exclusion are addressed to the sound discretion of the court." *State v. Thomas*, 157 W.Va. 640, 657, 203 S.E.2d 445, 456 (1974); *see also State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32, 40 (1983); *State v. Messer*, 166 W.Va. 806, 277 S.E.2d 634, 636 (1981); *State v. Sette*, 161 W.Va. 384, 395 n. 3, 242 S.E.2d 464, 471 n. 3 (1978). Accordingly, "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955); *see also* Syl. pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983); Syl. pt. 6, *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983); Syl. pt. 4, *State v. Ashcraft*, 172 W.Va. 640, 309 S.E.2d 600 (1983); *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983); Syl. pt. 3, *State v. Oldaker*, 172 W.Va. 258, 304 S.E.2d 843 (1983); Syl. pt. 2, *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981); Syl. pt. 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976). Dr. Knapp testified that his opinion with respect to the issue of sanity was based not only on the results of the MMPI, but also on his personal examination of the appellant, his review of her history, and his evaluation of the other four psychological tests administered at his direction. In denying the appellant's motion to strike, the trial court noted that, "Doctor Knapp's opinion is based upon a series of examinations conducted ... and is not based alone upon the tests to which the Defendant desires to attach great significance to an obvious error in grading." We therefore conclude that the trial court did not abuse its discretion in refusing to strike Dr. Knapp's testimony and to direct a verdict against the prosecution.

## III

The appellant's third assignment of error is the trial court's restrictions on the testimony of her psychiatrist. Specifically, Dr. Neilan, the appellant's psychiatrist, was permitted only to "testify from facts within her own knowledge," and was prohibited from testifying concerning her review of the transcript of the appellant's interview with Dr. Knapp and her consultations with Dr. Doron.

■ In Syllabus Point 1 of *State v. Myers*, 159 W.Va. 353, 222 S.E.2d 300 (1976), this Court held that:

> In a criminal trial, a psychiatrist testifying on the issue of insanity should be permitted to make unrestricted use of the information elicited by him during his interview with the defendant and should further be permitted to make reference to information available to him in the form of records or documents whose reliability has been reasonably established and which have been kept in the regular course of professional care or treatment of the defendant, provided that such information either from the interview or the records is information taken into consideration by the psychiatrist in arriving at his diagnosis.

*See also* Syl. pt. 1, *State v. Rhodes*, 166 W.Va. 402, 274 S.E.2d 920 (1981); *State v. Milam*, 159 W.Va. 691, 700, 226 S.E.2d 433, 440 (1976). Later, in Syllabus Point 1 of *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled on other grounds, Jones v. Warden*, 161 W.Va. 168, 173, 241 S.E.2d 914, 916–17 (1978), we broadened our recognition of this general rule to include any "expert medical witness," stating that:

> In presenting testimony in a criminal trial, an expert medical witness should be permitted to state the facts or data upon which he bases his opinion, and this includes information available to him in the

form of records or documents whose reliability has been reasonably established and which have been kept in the regular course of professional care or treatment of the defendant and are of a type reasonably relied upon by experts in the witness' particular field of expertise.

*See also* Syl. pt. 1, *Cunningham v. Martin,* 170 W.Va. 411, 294 S.E.2d 264 (1982).

There are primarily three justifications that have been articulated for this general rule of admissibility. First, it comports with standard medical methodology. As we noted in *State v. Pendry,* 159 W.Va. at 743, 227 S.E.2d at 215, "[A] physician ... bases his diagnoses on many different sources of information, including statements made by patients and relatives, reports and opinions from nurses, technicians and other doctors, and upon x-ray and other records." Second, it dispenses with the needless repetition of evidence. As we again noted in *State v. Pendry,* 159 W.Va. at 743, 227 S.E.2d at 215:

> The defense asserts, in essence, that every person ... who had anything to do with Pendry's examination, care or treatment would have to be independently produced as a witness before either Dr. Villarin or Dr. Salinquit could utilize the report in testifying as to any conclusions based in whole or in part on examination, tests, treatment, observations or conclusions of others.

Finally, it prevents requiring the jury to accept medical opinions as a matter of faith. As this Court noted in *State v. Myers,* 159 W.Va. at 358, 222 S.E.2d at 304:

> To prevent the doctor from utilizing such records and from disclosing to the jury his utilization of them in arriving at his diagnosis places an unreal stricture on him and compels him to be not only less than frank with the jury but also compels him to appear to base his diagnosis upon reasons which are flimsy and inconclusive when in fact they may not be.

■ In the present case, the trial court's prohibition against Dr. Neilan's testimony concerning her analysis of the tape recording of Dr. Knapp's interview with the appellant is particularly troubling. First, the court's ruling precluded Dr. Neilan from presenting an alternative analysis of the psychiatric and psychological implications of the substance of Dr. Knapp's interview. In other words, the appellant was denied the opportunity to submit a second opinion to the jury based upon the same evidence available to the state psychiatrist. This could mislead the jury into believing that the state psychiatrist possessed a superior data base from which his opinion concerning the appellant's insanity was formulated. Second, amnesia was an important component of Dr. Neilan's diagnosis of psychogenic fugue. The appellant's inconsistent ability to recall the events surrounding her husband's death was apparent throughout her conversations with the police, with Dr. Doron both before and after she was placed under hypnosis, and with Dr. Knapp during their interview. Yet, the trial court prevented Dr. Neilan from mentioning any of these indices of the appellant's mental status, which she sought to connect to her diagnosis of psychogenic fugue. Therefore, we conclude that the trial court's restriction on the testimony of the appellant's psychiatrist constituted reversible error.

## IV

■ The appellant's fourth assignment of error is the prosecution's presentation of certain rebuttal testimony regarding promissory notes that had been executed by the appellant in favor of her husband. On cross-examination, the appellant testified that she had signed only two or three notes in amounts ranging from two thousand five hundred to three thousand dollars. As rebuttal evidence, over the appellant's objection, the trial court permitted testimony by five witnesses concerning a number of promissory notes allegedly made by the appellant to her husband or his business over the years totalling anywhere from sixty to eighty thousand dollars, including amounts of seven thousand, five thousand, four thousand, two thousand, twelve hundred, one thousand, six hundred, and five hundred dollars. In Syllabus Point 2 of *State v. Fitzsimmons,* 137 W.Va. 585, 73 S.E.2d 136 (1952), *overruled*

*on other grounds,* Syl. pt. 2, *State v. Clay,* 160 W.Va. 651, 236 S.E.2d 230 (1977), this Court held that, "Whether the State in a criminal proceeding may introduce further evidence after a defendant has rested his case is a matter within the sound discretion of the trial court, and the exercise of that discretion will rarely be cause for reversal." *See also* Syl. pt. 3, *State v. Peyatt, supra; State v. Oldaker,* 172 W.Va. at 264, 304 S.E.2d at 849 ("A trial court ... has wide discretion in allowing rebuttal testimony after a party has rested."); *State v. Ward,* 168 W.Va. 385, 284 S.E.2d 881, 885 (1981); Syl. pt. 4, *Adams v. Sparacio,* 156 W.Va. 678, 196 S.E.2d 647 (1973); Syl. pt. 8, *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1954); Syl. pt. 4, *State v. Blankenship,* 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on other grounds, State v. McAboy,* 160 W.Va. 497, 498 n. 1, 236 S.E.2d 431, 432 n. 1 (1977); Syl. pt. 5, *State v. Scurlock,* 99 W.Va. 629, 130 S.E. 263 (1925); Syl. pt. 5, *State v. Driver,* 88 W.Va. 479, 107 S.E. 189 (1921). We conclude that the trial court did not abuse its discretion because the rebuttal testimony was offered to contradict the appellant's assertion on cross-examination that she had executed only two or three promissory notes to her husband or his business.

### V

The appellant's fifth assignment of error is the trial court's admission of the following testimony of a barmaid at the Cardinal Lounge concerning a conversation that took place two weeks prior to the killing:

> She said, "Shirley, there is something I have got to do." She said, "I have to do something." I said, "Jo, what is that?" She said, "He is talking about leaving me." I said, "Oh, he is, you know, not going to do that." She said, "Oh, yes." She said, "I have got to do something and I am going to have to do something quick." So, she told me either the following Monday—by the following Monday morning that she was going to sue Karl for divorce or she said, "I am going to kill—" ... She said, "I am going—"

Come Monday morning she was either going to sue him for divorce or she would kill him. She said, "Or I will kill him."

In *State v. Jones,* 128 W.Va. 496, 500, 37 S.E.2d 103, 106 (1946), this Court recognized the general rule that, "Threats against deceased made prior to the homicide are admissible as showing the state of mind." *See also* 40 Am.Jur.2d *Homicide* § 316, at 586 (1968) ("It is a universally established rule that in prosecutions for murder it is competent for the state to introduce in evidence threats, or statements in the nature of threats, by the defendant against the life of the deceased...."). Later, in Syllabus Point 3 of *State v. Flint,* 142 W.Va. 509, 96 S.E.2d 677 (1957), *cert. denied,* 356 U.S. 903, 78 S.Ct. 564, 2 L.Ed.2d 581 (1958), this Court held that, "Evidence of a threat made by a defendant on trial for murder, against the life of the person alleged to have been murdered, coupled with a statement of the manner or means by which such threat was intended to be carried out, is admissible." Unquestionably, a threat made against the victim of a homicide by a person accused of carrying out the threat only two weeks later is admissible, if nothing else, to show premeditation. Accordingly, we find no error in the admission of such testimony in the instant case.

### VI

The appellant's sixth assignment of error is the trial court's refusal to permit her daughter's testimony concerning a 1976 incident in which the deceased placed his hand on her then seventeen year old daughter's breast in a lascivious manner. In Syllabus Point 5 of *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945), this Court held that:

> Whether evidence offered is too remote to be admissible upon the trial of a case is for the trial court to decide in the exercise of a sound discretion; and its action in excluding or admitting the evidence will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.

242

See also Syl., *Gough v. Lopez*, 172 W.Va. 288, 304 S.E.2d 875 (1983); *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533, 542 (1982); *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592, 602 n. 7 (1980); *State v. Moubray*, 139 W.Va. 535, 543, 81 S.E.2d 117, 122 (1954); *State v. Lewis*, 133 W.Va. 584, 597, 57 S.E.2d 513, 522 (1949). Although we have recognized that, "As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility," Syl. pt. 6, *State v. Gwinn, supra*, given the questionable relevancy of the testimony excluded, we conclude that the trial court did not abuse its discretion in sustaining the State's objection.

## VII

 The appellant assigns as her seventh error the trial court's refusal to give two of her proffered instructions to the jury. It is well settled, however, that, "Where instructions given clearly and fairly lay down the law of the case, it is not error to refuse other instructions on the same subject. The court need not repeat instructions already substantially given." Syl. pt. 4, *State v. Bingham*, 42 W.Va. 234, 24 S.E. 883 (1896); *overruled on other grounds*, Syl. pt. 5, *Pinkerton v. Farr*, 159 W.Va. 223, 220 S.E.2d 682 (1975), Syl. pt. 6, *State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955); *see also* Syl. pt. 3, *State v. Evans*, 172 W.Va. 810, 310 S.E.2d 877 (1983); Syl. pt. 5, *State v. Ashcraft, supra;* Syl. pt. 13, *State v. Gum, supra;* Syl. pt. 6, *State v. Meadows, supra;* Syl. pt. 3, *State v. Ray*, 171 W.Va. 383, 298 S.E.2d 921 (1982); Syl. pt. 2, *State v. Holdren*, 170 W.Va. 355, 294 S.E.2d 159 (1982); Syl. pt. 2, *State v. Lott*, 170 W.Va. 65, 289 S.E.2d 739 (1982); Syl. pt. 4, *State v. Helmick*, 169 W.Va. 94, 286 S.E.2d 245 (1982); Syl. pt. 7, *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976); Syl. pt. 4, *State v. Johnson*, 157 W.Va. 341, 201 S.E.2d 309 (1973); Syl. pt. 20, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). A careful review of the instructions given by the trial court supports its rejection of the appellant's two instructions as repetitive.

## VIII

 The appellant's final assignment of error is the trial court's giving of two of the State's instructions. The first, regarding the definition of "malice" necessary to support a murder conviction, was challenged as repetitive of another instruction on the same matter. The second, dealing with the insanity issue, which stated that, "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks *substantial capacity* either to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law," was challenged as lessening the prosecution's burden of proof with respect to the issue of her sanity. (Emphasis added). Close examination of the two malice instructions in question reveals that the appellant's objection as to repetitiveness is without merit. The first of these instructions informed the jury only that malice was a necessary element or murder, while the second defined the concept. Furthermore, although the insanity instruction incorrectly stated the law under *State v. Grimm*, 156 W.Va. 615, 632, 195 S.E.2d 637, 647 (1973), *overruled on other grounds, State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87, 90–91 (1980), where this Court stated that, "We would approve of an instruction to the effect that an accused is not responsible for his act if, at the time of the commission of the act, it was the result of a mental disease or defect causing the accused to lack the capacity either to appreciate the wrongfulness of his act, or to conform his act to the requirements of law," it effectively greatened, and not lessened, the burden of the prosecution to prove the appellant sane at the time of her husband's death. *See also* Syl. pt. 2, *State v. Myers, supra.* Obviously, it is easier to prove mere capacity than it is to prove substantial capacity. In Syllabus Point 14 of *State v. Hamric, supra*, this Court held that, "It is not reversible error to give an erroneous instruction which favors the party complaining of such instruction." Therefore, we conclude that the appellant's final assignment of error is without merit.

## IX

For the foregoing reasons, due to the prosecution's failure to disclose the appellant's psychological tests and results and the trial court's restriction on the appellant's psychiatrist to testify only from facts within her knowledge, we must reverse the appellant's conviction and remand her case to the Circuit Court of Lewis County for a new trial.

Reversed and remanded.