342 S.E.2d 259

**STATE of West Virginia**

v.

**Eddie Eugene BERRY.**

**No. 16709.**

Supreme Court of Appeals of West Virginia.

April 3, 1986.

---

D. Grove Moler, Moler & Staton, Mullens, for appellant.

Silas B. Taylor, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Raleigh County, entered August 9, 1984, which sentenced the appellant, Eddie Eugene Berry, to imprisonment in the penitentiary for a term of not less than five nor more than eighteen years upon his conviction, after a jury trial, of the crime of murder of the second degree. The appellant contends that the trial court committed error in its rulings on the admissibility of certain evidence and in its instructions to the jury. We find no reversible error, and we affirm.

On the evening of January 23, 1982, Loretta Montrose Berry, the appellant's wife of three months, died of a shotgun wound at the couple's residence at Helen, Raleigh County. The appellant, the only other person in the house at the time of the shooting, initially reported that Loretta had killed herself. Several days later, however, when confronted with evidence that contradicted his explanation of the circumstances surrounding his wife's death,[1] the appellant admitted that he had shot her.

The appellant was indicted for murder. At his trial, which commenced in the Circuit Court of Raleigh County on May 23, 1983, the appellant asserted that Loretta's death had been accidental. He admitted that prior to the shooting he had quarreled with her and, in his fury, had struck her several times. He asserted, however, that Loretta had then threatened to kill herself and had reached for a loaded shotgun customarily kept in the bedroom. The appellant testified that a struggle ensued, during which he managed to gain possession of the gun. The appellant testified that he struck Loretta to push her away and that as she fell back, the gun went off in his hand, killing her.

The State, on the other hand, introduced evidence that the appellant had falsely reported Loretta's death as a suicide to friends, family members and the police for several days after the shooting, that he had previously threatened his wife and that Loretta Berry was a happy, outgoing person who was not predisposed to attempt or threaten to kill herself.

On May 26, 1983, the jury returned a verdict finding the appellant guilty of murder of the second degree. The appellant's motion for a new trial was overruled, and he was sentenced to imprisonment at the penitentiary for a term of not less than five nor more than eighteen years. On July 23, 1984, the appellant was resentenced to allow for this appeal.

The appellant's principal contention on appeal is that the trial court erred in allowing the State to introduce evidence of threats he had made against Loretta prior to the shooting. At trial, there was evidence that on one occasion, the appellant had stated in Loretta's presence that if she ever did anything, he was going to take her into the mountains, kill her and bury her there. On another occasion it was alleged that the appellant, in the course of a quarrel with Loretta, had drawn a handgun and threatened to "blow her head off."

" 'It is a universally established rule that in prosecutions for murder it is competent for the state to introduce in evidence threats, or statements in the nature of threats, by the defendant against the life of the deceased....' " *State v. Duell*, 175 W.Va. 233, 332 S.E.2d 246, 254 (1985), quot-

---

**1.** Ballistics tests conducted by police experts showed that the muzzle of the shotgun was at least five and one half feet from Loretta Berry's body when it was fired. In addition, other tests revealed no powder burns on Loretta's hands, and her fingerprints were not found on the gun.

ing 40 Am.Jur.2d *Homicide* § 316, at 586 (1968).

"Evidence of a threat made by a defendant on trial for murder, against the life of the person alleged to have been murdered, coupled with a statement of the manner or means by which such threat was intended to be carried out, is admissible." Syl. Pt. 3, *State v. Flint*, 142 W.Va. 509, 96 S.E.2d 677 (1957).

Syllabus Point 5, *State v. Duell, supra.* Such evidence is admissible for the purpose of showing the accused's state of mind or mental condition, *State v. Jones*, 128 W.Va. 496, 37 S.E.2d 103 (1946); *State v. Lutz*, 85 W.Va. 330, 101 S.E. 434 (1919), and to show motive, intent or malice. *State v. Prater*, 52 W.Va. 166, 43 S.E. 230 (1900); *State v. Sheppard*, 49 W.Va. 582, 39 S.E. 676 (1901).

The appellant contends, however, that the evidence of antecedent threats was too remote to be admissible into evidence. One of the incidents related by the prosecution witnesses occurred several months prior to the shooting while the other occurred a year to eighteen months before Loretta's death.

■ "As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." Syllabus Point 6, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982).

"Whether evidence offered is too remote to be admissible upon the trial of a case is for the trial court to decide in the exercise of a sound discretion; and its action in excluding or admitting the evidence will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 5, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945).

Syllabus Point 6, *State v. Duell, supra.* An abuse of discretion is more likely to result from the exclusion rather than the admission of evidence to which objection is made on the ground of remoteness. *See State v. Gwinn, supra; Yuncke v. Welker, supra; State v. Yates*, 21 W.Va. 761 (1883).

■. We cannot say that in this case the trial court abused its discretion in not excluding the challenged evidence as too remote. Other evidence showed that the appellant and Loretta Berry had engaged in a long and intense courtship prior to their brief marriage. The threats allegedly made by the appellant occurred towards the end of that courtship. In view of the relevance of the evidence to the issues before the jury, we find no reversible error in the trial court's decision to admit the evidence of the appellant's antecedent threats against his wife's life.[2]

The appellant also assigns as error the prosecution's cross-examination of the appellant as to the religious significance of the appellant's false report of suicide for members of her family. The apparent purpose of this inquiry was to establish that a threat of or attempt at suicide was inconsistent with Loretta Berry's religious beliefs.[3] The trial court overruled defense counsel's objection to the prosecutor's question, but the appellant professed not to understand it, and the prosecution abandoned the inquiry.

■ The appellant contends that the prosecution's question was calculated to create prejudice against the appellant by directing the jury's attention to Loretta Berry's religious beliefs. Initially, we note that the State's inquiry was not without probative value. The appellant's defense rested entirely on his testimony that his wife was accidentally killed in the course of his struggle to prevent her from committing suicide. The State was entitled to present evidence to rebut the appellant's assertion that Loretta was attempting to carry out threats of suicide at the time of

2. The appellant also contends that the admission of Ms. Hayworth's testimony was reversible error because it invited the jury to speculate upon a prior criminal act with which the appellant was not charged. The record shows, however, that the trial court admonished the jury that it could consider the evidence of threats only for the limited purposes for which it was introduced.

3. Witnesses for the prosecution had previously testified, without objection, that Loretta Berry was a Roman Catholic.

her death. *See* 40 C.J.S. *Homicide* § 217 (1936). In such circumstances, evidence of the deceased's religious beliefs, if properly presented, may well be relevant.

■ Regardless of the probative value of the prosecution's inquiry, however, we fail to see how the appellant could have been prejudiced by the question in view of the fact that he did not answer it. The jury was not allowed to consider any evidence of the religious beliefs of Loretta Berry or her family, the prosecution did not belabor the point, and no mention was made of it in counsel's arguments to the jury. In view of these circumstances, we cannot say that the prosecutions reference to the religious implications of the false report of suicide was, in and of itself, so prejudicial as to constitute reversible error under our decision in *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980). *See State v. Haverty*, 165 W.Va. 164, 267 S.E.2d 727 (1980); *State v. Harlow*, 137 W.Va. 251, 71 S.E.2d 330 (1952); *State v. Justice*, 107 W.Va. 490, 148 S.E. 843 (1929).

The appellant also contends that the State's inquiry was prejudicial because it emphasized the fact that the appellant had misrepresented the circumstances surrounding his wife's death.[4] We note, however, that substantial evidence of the appellant's false report of Loretta's suicide was introduced throughout the trial without objection and that the appellant, himself, admitted to having made the false statements. In such circumstances any error in the admission of the evidence to which objection was made is harmless. *See, e.g., State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983); *State v. Gwinn, supra.*

■ In addition, it appears that evidence of the appellant's false declarations was clearly admissible. Since the appellant was the only witness who testified as to what occurred on the night of his wife's death, his credibility was a critical issue at trial.

The State was entitled to offer evidence of the appellant's prior inconsistent statements for purposes of impeachment. *See, e.g., State v. Clark*, 175 W.Va. 58, 331 S.E.2d 496 (1985); *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977); *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975); *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956). Moreover, like evidence of flight, evidence of false or misleading statements given by the accused to the police as to matters under investigation is generally held to be relevant and admissible as a circumstance indicating consciousness of guilt. *See State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982); *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). *See generally* 22A C.J.S. *Criminal Law* § 636 (1936). The trial court in this case properly instructed the jury that the evidence of the appellant's false report of suicide was merely a factor which they could consider in weighing the evidence on the issue of his guilt of the crime of murder. Accordingly, we find no error in the prosecution's references to the appellant's statements.

■ The appellant's other assignments of error relate to the trial court's instructions to the jury. He challenges certain introductory remarks made by the trial court to explain to the jury the purpose of instructions. The record shows, however, that the appellant raised no objection to the court's remarks at trial. "The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection." Syllabus Point 3, *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982). *See also State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979); *State v. Angel*, 154 W.Va. 615, 177 S.E.2d 562 (1970). Since we find no "plain error" in the trial court's remarks, we will not consider this assignment of error.

---

4. In his initial statement to the police, the appellant asserted that after he quarreled with Loretta, he went into the living room and was preparing to leave the house when he heard a gunshot. The appellant stated that he then rushed into the bedroom where he found Loretta lying on the floor, fatally wounded. The appellant also told friends and family members that Loretta had killed herself. The appellant did not change his story until the police confronted him with evidence that the fatal wound could not have been self-inflicted some five days after the shooting.

■ The appellant also objects to the giving of State's Instruction No. 3:

> THE COURT INSTRUCTS THE JURY that it is not required that the State prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act. *Proof beyond a reasonable doubt, therefore, must be proof of such convincing character that a reasonable person would not hesitate to rely and act upon it.*

The appellant contends that the italicized portion of this instruction varies substantially from customary reasonable doubt language and invited the jury to convict on a lesser degree of proof. *See State v. Keffer,* 168 W.Va. 59, 281 S.E.2d 495 (1981).

This contention is clearly without merit. State's Instruction No. 3 is taken verbatim from the standard reasonable doubt instruction approved by this Court in *State v. Goff,* 166 W.Va. 47, 272 S.E.2d 457 (1980). Accordingly, we find no error in the reading of this instruction at trial.

For the reasons stated herein, we find no reversible error, and we affirm the judgment of the Circuit Court of Raleigh County.

Affirmed.